UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                                                       :
ANI D. BELLEHSEN,                                   :
                                                                                   :
                           Plaintiff,          : **MEMORANDUM DECISION**
                                                                   : **AND ORDER**
              - against -                               :
                                                                                   : 19-cv-3147 (BMC)
COMMISSIONER OF SOCIAL SECURITY,   :
                                                                                    :
                           Defendant.        :
---------------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not entitled to Social Security Disability benefits under the Social Security Act.

      Plaintiff raises three points of error. First, plaintiff contends that the ALJ failed to appropriately weigh the medical opinions of her treating psychiatrist. Second, plaintiff contends that the ALJ failed to adopt the limitations from medical opinions that were afforded "great weight." Third, plaintiff contends that the ALJ improperly discounted her subjective complaints of pain. For the reasons stated below, plaintiff's motion for judgment on the pleadings is denied and the Commissioner's cross-motion for judgment on the pleadings is granted.

I.

      Plaintiff first claims that the ALJ gave insufficient reasons to discount the several limitations opinions of her treating psychiatrist. "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not afford a treating physician's opinion controlling weight, she must still "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

Among the factors that the ALJ must consider when deciding whether to give a treating physician's opinion a certain weight are "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess, 537 F.3d at 129 (internal quotations and alterations omitted). If, however, "a searching review of the record" assures the reviewing court "that the substance of the treating physician rule was not traversed," the court should affirm the ALJ's decision despite his "failure to 'explicitly' apply the Burgess factors." See Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019) (*colatus*[1]).

Plaintiff's treating psychiatrist, Dr. Stanley Hertz, completed three separate medical source statements between 2014 and 2018. In his March 9, 2014 opinion, Dr. Hertz identified plaintiff as having a non-specified mood disorder (not ADHD) and Borderline Personality Disorder. He also expressed that plaintiff had a history of mood disturbance, disorganization, and an "inability to follow through with expected responsibilities."

As for functional limitations, Dr. Hertz noted that plaintiff had "marked difficulty" in paying bills, planning daily activities, getting along with family, getting along with friends,

---

[1] I.e., edited citation.

2

responding to those in authority, holding a job, and avoiding altercations.  Plaintiff also had deficiencies in independent functioning, concentration, persistence in tasks, and the ability to complete tasks in a timely manner.  And in stressful circumstances at work or in work-like settings, Dr. Hertz said that plaintiff exhibited an inability to appropriately accept supervision, withdrawal from situations, poor attendance, inability to cope with schedules, poor decision making, inability to adopt to changing demands, persistent irrational fear of specific objects or situations, recurrent severe panic attacks, recurrent obsessions or compulsions, and recurrent and intrusive recollections of a traumatic experience.  Under the "Employability" heading, Dr. Hertz placed a checkmark next to "Able to participate in activities (e.g. work, education and training) on a part time basis."

Dr. Hertz's April 27, 2015 opinion, completed on an assessment form provided by Nassau County Department of Social Services, again identified diagnoses of a non-specified mood disorder and Borderline Personality Disorder.  He stated that plaintiff's condition has improved, but still noted that plaintiff was "very limited" in understanding and remembering complex instructions, maintaining attention and concentration, and in her ability to use public transportation.  Dr. Hertz further noted that plaintiff was "moderately limited" in understanding and remembering simple instructions, interacting appropriately with others, maintaining socially appropriate behavior, and performing low stress or simple tasks.

Dr. Hertz completed his third and final opinion prior to plaintiff's administrative hearing on March 6, 2018.  Therein he identified Bipolar Disorder as plaintiff's only diagnosis under the DSM-IV and placed checkmarks next to clinical findings for poor memory, sleep disturbance, mood disturbance, emotional lability, anhedonia/loss of interest, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, social withdrawal, manic

syndrome, persistent irrational fears, and generalized persistent anxiety. According to Dr. Hertz, plaintiff's "primary symptoms" were short attention span, poor executive function, and mood lability. Finally, Dr. Hertz noted that plaintiff had marked difficulty in 18 out of 20 areas of functionality, and moderate limitations in the other two (ability to make simple work-related decisions and the ability to ask simple questions or request assistance).

In his decision, the ALJ discounted Dr. Hertz's opinions as to plaintiff's limitations with very little immediate analysis:

> The opinions of Dr. Hertz were based on multiple examinations over a prolonged period of time. The opinions of Dr. Hertz, however, were not consistent with the medical evidence, which supports a less severe degree of limitation. Therefore, the opinions of Dr. Hertz were given some weight, but not great weight.

Furthermore, on several additional occasions, the ALJ discussed Dr. Hertz's opinions and then re-articulated that, "for the reasons noted above, the opinions of Dr. Hertz were given some weight, but not great weight."

To be sure, the ALJ's articulation for why he assigned "some weight" to Dr. Hertz's opinions appears to fall below the standards set forth in the regulations and case law. He did not identify specific limitations that he found to be inconsistent with the medical evidence in the record and he largely failed to explicitly apply the Burgess factors discussed above. As plaintiff points out, this is not merely a matter of arriving at the correct answer but also "to let claimants understand the disposition of their cases." See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Such an explanation may be particularly important in situations where a claimant "knows that her physician has deemed her disabled" and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." Id.

4

Nevertheless, the rest of the ALJ's decision supplies a detailed examination of the record evidence, most of which supports the weight he afforded Dr. Hertz's opinions. For example, even though plaintiff claimed to have been disabled starting on May 12, 2008, there is no documentation of any medical treatment or other evidence showing that plaintiff was diagnosed with a qualifying impairment by an acceptable medical source prior to 2009.

Although plaintiff was designated as having a learning disability during her early school years, and tested in the 12th percentile for IQ as compared to other children her age, she presented as a happy and socially confident child. Specifically, her psychological evaluation "Test Results" reported that

> Ani presents as a lively and gregarious youngster. She talked easily with the examiner and appeared very open about herself. She did not appear anxious in the testing session. She took initiative during testing. Ani was clear about what she could and could not do and would ask questions if she needed additional information. She indicated she found school difficult both in Hebrew and in English. Ani appears to have many friends and is socially comfortable.

During the 1995-1996 school year, she was placed within a general classroom and only required to participate in the "Resource Room" service for 30 minutes each day.

Dr. Hertz first diagnosed plaintiff with a mood disorder in 2011, and in 2012 plaintiff was diagnosed at St. Luke's Roosevelt Hospital Center with a major depressive disorder, a generalized anxiety disorder, and cannabis abuse. In late 2012, plaintiff returned to Dr. Hertz, who acknowledged that her mood was depressed, but found her thought process to be logical and goal-directed; that she was oriented to time, person, and place; that she had a good memory; and that her attention and concentration were normal. In early 2013, Dr. Israel Samson noted that plaintiff had no anxiety, depression, agitation, hallucination, or disorientation, even though she had "not been taking her meds." Dr. Samson again found no anxiety, depression, agitation, hallucination, or disorientation during a subsequent visit in August 2013.

Plaintiff returned to Dr. Hertz in March 2014, and although he noted her depressed mood, anxiety, and issues with attention span, the rest of the examination was unremarkable. Again, in April 2014, Dr. Hertz acknowledged plaintiff's symptoms of mood disorder, but he also wrote that plaintiff has no problem with activities of daily living ("ADLs"); doesn't have disordered thoughts; that her mood was "ok on regimen"; and that she has no problems with work. On May 27, 2015, Dr. Hertz noted plaintiff to be anxious and to have problems with her mood, but nonetheless concluded that her thought process was logical and goal-directed; that she was oriented to time, place, and person; that she does not have a problem with ADLs; that she has no problems at work; that she has no adverse effects from her medication; that she has good social judgement; and that her memory was good and had a normal attention span and concentration. In a June 2015 follow-up examination, plaintiff reported that her mood was okay and that she was less irritable, and Dr. Hertz again noted that plaintiff had no problems with ADLs or problems at work; that she had good social and everyday judgment; that she was oriented to time, place, and person; and that she had normal attention span and concentration.

As the foregoing indicates, much of plaintiff's medical history does not support the significantly restrictive limitations Dr. Hertz opined exist. Thus, the assignment of "some" but not "great" weight to Dr. Hertz's limitations opinions is not error.

II.

Plaintiff next contends that the ALJ "failed to reconcile the opinion of Dr. Acer, which he gave great weight, with the actual limitations opined within." Specifically, plaintiff points out that although Dr. Acer opined that plaintiff could maintain attention and concentration "*at least on a short term basis*" (emphasis added), the ALJ did not imply a limitation for long-term attention and concentration in his analysis. This was particularly harmful error, she says,

6

because the Vocational Expert stated at the administrative hearing that any more than 10% of time off task "is excessive and is typically not tolerated."

Dr. Kathleen Acer performed a psychiatric evaluation of plaintiff in 2015. In her medical source statement, Dr. Acer concluded that

> [w]ith regard to vocational capacities she can follow and understand simple instructions and directions and appropriately perform simple tasks. She may have trouble dealing with stress, adequately relating with others, making appropriate decisions, and performing complex tasks. She can maintain attention and concentration at least on a short-term basis.
>
> The results of the evaluation do appear to be consistent with psychiatric issues which may, to a certain extent, inhibit functioning.

Dr. Acer recommended only that plaintiff continue her psychiatric treatment and counseling. The ALJ gave this opinion "great weight":

> In understanding, remembering, or applying information, the claimant has a moderate limitation. In support of this conclusion, it is noted that, after examining the claimant on December 28, 2015, Dr. Kathleen Acer, a consulting psychologist, concluded that the claimant could follow and understand simple directions and instructions and appropriately perform simple tasks, but might have difficulty performing complex tasks. Dr. Acer is a specialist in psychology, and her opinion was based on a thorough examination. In addition, Dr. Acer's report was well supported by the medical evidence. Therefore, Dr. Acer's opinion was given great weight.

All the ALJ said with regard to Dr. Acer's opinion of plaintiff's attention and concentration was that "Dr. Acer concluded that the claimant could maintain attention and concentration at least on a short-term basis."

Plaintiff's contention that the ALJ erred by not inferring from Dr. Acer's "at least in the short-term" remark that she was unable to concentrate in the long term is incorrect for several reasons. First, there is little reason to believe that Dr. Acer meant to imply that plaintiff has any significant concentration limitation in the long term. The ALJ only gave great weight to the actual opinion submitted, not the unwritten, possible inferences that can be drawn from the

7

opinion. Second, it is "the claimant [that] has the burden [of proof] on the first four steps" of the disability analysis. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). To require the ALJ to extend expert findings purely on the basis of grammatical construction would invert that burden, or at least impermissibly water it down. And third, the ALJ did, in fact, take into account plaintiff's possible concentration issues in reaching a Residual Functional Capacity. Specifically, he found that plaintiff "has severe mental impairments, which could be expected to limit her ability to learn and perform complex tasks, to tolerate changes in the workplace, and to interact with others." Although not *expressly* addressing "concentration" or "attention," these functional limitations reflect that the ALJ recognized the difficulties plaintiff might face because of decreased concentration and attention.

In the end, "once an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (emphasis in original) (*colatus*). Here, the ALJ found that plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace, which he based on plaintiff's consultative psychological examination, several mental health examinations, and the other record evidence. At the very least, the ALJ's conclusion that plaintiff's concentration issues should not result in more than 10% of time off task is one that a reasonable factfinder could surely reach.

### III.

Plaintiff's final point of error is that the ALJ did not properly evaluate her subjective complaints. An "ALJ must make credibility findings when there is conflicting evidence with respect to a material issue such as pain or other disability." Donato v. Sec'y of Dep't of Health & Human Servs. of U.S., 721 F.2d 414, 418 (2d Cir. 1983). Pursuant to SSR 16-3P, in assessing

8

a claimant's subjective symptoms,[2] an ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms . . . and any other relevant evidence in the case record."

Assuming "the subjective evidence of [a claimant's symptoms]" is sufficient to establish her disability, if the ALJ did "not consider the credibility of [a claimant's] claims of disabling [symptoms], but instead rejected her claims on the ground that objective, clinical findings did not establish a cause for such intense [symptoms]," then the decision should be reversed and the case remanded.  See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  However, in considering a plaintiff's complaints of pain, "[t]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  Id.  Evidence such as the claimant's daily activities; the location, duration, frequency, and intensity of her pain; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; and other relief measures may also be considered. 20 C.F.R. § 404.1529(c)(4).

As the ALJ described it, plaintiff testified that

> she has a learning disability, and has difficulty with listening and processing.  The claimant also testified that she gets "antsy," has difficulty listening, and has panic attacks if directed to do anything.  In addition, the claimant testified that it was very difficult for her to follow through with things, that her mood would shift if something happens, and that she has a little authoritative issues [*sic*].  The claimant indicated that she is sometimes combative with her bosses because of mood shifts.  Furthermore, the claimant testified that she gets anxious in the car but pushes herself to drive.  The claimant added that she has trouble with public transportation because of the crowds and delays, has panic attacks in social situations, and feel[s] sedated and occasionally throws up due to her medication.

---

[2] The previous policy statement, SSR 96-7, used the term "credibility" to refer to the assessment of a claimant's subjective symptoms.  In 2017, SSR 16-3P superseded SSR 96-7p, and eliminated the use of the term "credibility" to clarify that "subjective symptom evaluation is not an examination of an individual's character," as some adjudicators presumably believed.

9

He then concluded that although he "finds that the claimant's medically determinable impairments could reasonably be expected to cause" these symptoms, plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."

Plaintiff argues in this context what she argued with regard to the ALJ's treatment of Dr. Hertz's opinions – that he failed to provide "a narrative discussion to explain what weight he assigned" to plaintiff's statements. Specifically, she contends that "the ALJ provided no reasoning" to justify not adopting, wholesale, her subjective description of her symptoms. I once again agree with plaintiff that the decision is wanting for better organization, but it is nonetheless sufficient in this case.

Similar to how the ALJ dealt with Dr. Hertz's opinion, he once more refrained from directly or expressly comparing plaintiff's subjective complaints to the other evidence in the record. This practice is indeed not ideal for the reasons discussed above. However, as the Commissioner stresses, plaintiff's grievance in this specific scenario would appear to be "one of form over substance": The next three full pages in the ALJ's decision go on to describe, in chronological order, plaintiff's test results and medical reports from 1995 to 2018. This analysis established that despite plaintiff's diagnosed mood disorders, the record reflects many years of less-than-debilitating symptoms. There was thus no error for which remand would be appropriate.

[

## CONCLUSION

Plaintiff's [15] motion for judgment on the pleadings is denied and the Commissioner's [17] cross-motion for judgment on the pleadings is granted.  The Clerk is directed to enter judgment, dismissing the case.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       June 23, 2020